## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Neil Leonard Haddley,　　　　　　　　　　　　　Civil No. 16-1960 (DWF/LIB)

　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM**
　　　　　　　　　　　　　　　　　　　　　　　　**OPINION AND ORDER**

Next Chapter Technology, Inc., a corporation;
Vaughn Mulcrone, an individual;
dataBridge, LLC, a limited liability company;
County of Kittson, Minnesota;
County of Mahnomen, Minnesota;
County of Marshall, Minnesota;
County of Norman, Minnesota;
County of Polk, Minnesota;
County of Red Lake, Minnesota;
County of Roseau, Minnesota;
County of Kandiyohi, Minnesota;
County of Rice, Minnesota;
County of Scott, Minnesota;
County of Stearns, Minnesota;
County of Washington, Minnesota;
County of Becker, Minnesota;
County of Clay, Minnesota;
County of Dodge, Minnesota;
County of Isanti, Minnesota;
County of Otter Tail, Minnesota;
County of Mower, Minnesota;
County of Steele, Minnesota; and
County of Waseca, Minnesota;

　　　　　　Defendants.

---

Alexander Farrell, Esq., and Russell M. Spence, Jr., Esq., Hellmuth & Johnson PLLC, counsel for Plaintiff Neil Leonard Haddley.

Bruce H. Little, Esq., and Sarah Pruett, Esq., Lindquist & Vennum LLP, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. No. 44); and Plaintiff's Motion to Consolidate (Doc. No. 51). For the reasons set forth below, the Court grants in part Defendants' Motion to Dismiss and grants Plaintiff's Motion to Consolidate.

## BACKGROUND

### I. Factual Background

Plaintiff Neil Haddley filed suit against Defendants alleging various acts of copyright infringement stemming from their use and then replacement of a software program called Scanning Enabler. In 2007, Plaintiff developed Scanning Enabler as a program to scan documents into Microsoft SharePoint and which also allowed the user to view and index paper documents without leaving SharePoint. (Doc. No. 18 ("Am. Compl.") ¶ 36.) Haddley first published Scanning Enabler in Australia while he was living there. At the time, Haddley was operating as the sole shareholder of Blue Duck Pty., Ltd, an Australian entity that Haddley formed in 2006. Blue Duck Pty. had no formal employees. Instead, Haddley used Blue Duck Pty. as a vehicle to market and sell Scanning Enabler. (Defs.' MTD Memo. at 4.)[1]

---

[1] The Court will cite Defendants' Memorandum in Support of their Motion to Dismiss as "Defs.' MTD Memo." (Doc. No. 46); Plaintiff's Memorandum in Opposition as "Pl.'s MTD Opp." (Doc. No. 48); and Defendants' Reply Brief as "Defs.' MTD Reply" (Doc. No. 49). The Court will cite Plaintiff's Memorandum in Support of his Motion to Consolidate as "Pl.'s Consolidation Memo." (Doc. No. 54); and Defendants' Memorandum in Opposition to the Motion to Consolidate as "Defs.' Consolidation Opp." (Doc. No. 58).

(Footnote Continued on Next Page)

In 2009, Haddley entered into a resale agreement for Scanning Enabler with Defendant Next Chapter Technology ("NCT"). (Am. Compl. ¶ 46.) Haddley also licensed to NCT two versions of Scanning Enabler, which NCT then incorporated into its document-management program ScottWorks. (*Id.* ¶¶ 47-48.) NCT helped develop ScottWorks for Scott County, Minnesota. (*Id.* ¶ 51.) Based on the success of ScottWorks, NCT began marketing the product as CaseWorks to other county governments in Minnesota. (*Id.* ¶¶ 52-53.) A number of Minnesota counties purchased licenses for CaseWorks, which used Scanning Enabler as part of its functionality. These counties are defendants in this action (generally, the "County Defendants").[2]

In 2012, Haddley began working for NCT. While Haddley worked there, NCT licensed Scanning Enabler to Clay County and Steele County, Minnesota. (*Id.* ¶¶ 60, 98.) To download and access Scanning Enabler, a purchaser was required to enter a unique license key. (*See id.* ¶ 63.) Plaintiff alleges that Defendants Clay and Steele Counties exceeded the licenses by downloading too many copies of Scanning Enabler. (*Id.* ¶¶ 67, 103.) Additionally, Plaintiff alleges that six of the County Defendants[3] accessed Steele and Clay counties' servers to copy Scanning Enabler without paying for additional

---

(Footnote Continued From Previous Page)

[2] The County Defendants are the Minnesota counties of Kittson, Mahnomen, Marshall, Norman, Polk, Red Lake, Roseau, Kandiyohi, Rice, Scott, Stearns, Washington, Becker, Clay, Dodge, Isanti, Otter Tail, Mower, Steele, and Waseca.

[3] The six counties are Becker, Dodge, Isanti, Otter Tail, Mower, and Waseca.

licenses. Plaintiff also alleges that NCT was actively involved in enabling this system of shared licenses. (*See, e.g.*, *id.* ¶ 84.)

Near the end of 2012, Haddley apparently learned that some of the County Defendants were allegedly using unlicensed versions of Scanning Enabler. (*Id.* ¶ 131.) Haddley raised the issue with NCT. Haddley and NCT attempted to resolve the issue, but could not reach an agreement to remedy Haddley's concerns. With the issues unresolved, NCT fired Haddley without cause. (*Id.* at ¶ 139.) NCT then hired Defendant dataBridge to create a replacement product for Scanning Enabler. The replacement product was distributed to the County Defendants. (*Id.* ¶ 166-67.)

## II. Procedural History

On August 24, 2015, Haddley filed a *pro se* complaint against eight of the County Defendants[4] (the "Isanti Matter").[5] In that complaint, Haddley brought claims related to the Isanti Defendants' use of Scanning Enabler. On September 16, 2015, NCT moved to intervene pursuant to its contractual duty to defend the Isanti Defendants. (Isanti, Doc. No. 26.) Plaintiff, still *pro se*, opposed the motion. (Isanti, Doc. No. 36.) On November 18, 2015, the magistrate judge denied the motion. (Isanti, Doc. No. 49.) In the Isanti Matter, Haddley has obtained counsel, discovery has closed, and the parties have cross-moved for summary judgment.

---

[4] The eight defendants are Becker, Clay, Dodge, Isanti, Otter Tail, Mower, Steele, and Waseca (generally, the "Isanti Defendants").

[5] *Haddley v. Isanti et al.*, Civ. No. 15-2106 (D. Minn). The Court will cite to documents in the Isanti Matter as "Isanti, Doc. No. __."

After hiring counsel, Haddley filed a new complaint here, which was later amended. In the Amended Complaint, Plaintiff brings three claims: (1) a claim against NCT and its sole shareholder, Vaughn Mulcrone, for copyright infringement for providing copies of Scanning Enabler to the Isanti Defendants; (2) a claim against all defendants for copyright infringement stemming from the creation and use of the replacement product for Scanning Enabler; and (3) a claim against NCT, Mulcrone, and the Isanti Defendants alleging that they undertook efforts to circumvent Scanning Enabler's license-key system.

## DISCUSSION

Defendants moved to dismiss for lack of subject matter jurisdiction. (Doc. No. 44.) Plaintiff has moved to consolidate this case with the Isanti Matter. (Doc. No. 51.) Defendants also moved to dismiss for failure to state a claim for Count 2 as to the County Defendants and for Count 3 as to the Isanti Defendants.

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To survive a motion under Rule 12(b)(1), the party asserting jurisdiction has the burden of proving jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

A Rule 12(b)(1) motion may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729

5

n.6 (8th Cir. 1990). When a defendant brings a facial challenge—that is, even if the allegations were true, they lack an essential element for jurisdiction—a court reviews the pleadings alone and assumes the allegations are true. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *accord Osborn*, 918 F.2d at 729 n.6. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and weigh the accuracy of the allegations. *Titus*, 4 F.3d at 593; *accord Osborn*, 918 F.2d at 729 n.6.

Defendants move to dismiss on the basis that Plaintiff's copyright registration certificate is materially inaccurate. Specifically, Defendants argue that Plaintiff's registration certificate incorrectly identifies Haddley as the author of Scanning Enabler, instead of Blue Duck Pty.—the Australian entity that Plaintiff used to market and sell the program. Before a plaintiff may file a lawsuit for copyright infringement, the plaintiff must register his copyright. 17 U.S.C. § 411.[6] If a registration certificate is inaccurate, a plaintiff may still proceed with a civil action unless the inaccurate information was provided with knowledge of the inaccuracy and the inaccuracy of the information would have caused the Register of Copyrights to refuse to issue the registration certificate. 17

---

[6] The holder of a foreign copyright does not need to register before filing suit, unless he is seeking statutory damages or attorney fees. 17 U.S.C. § 412; *see also The Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 162 (S.D.N.Y. 2009) ("Section 412 has no exception excusing foreign works from its mandate: it requires registration to obtain statutory damages for both domestic and foreign works.").

U.S.C. § 411(b). The misrepresentation must be inaccurate and material. *See, e.g.*, *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 622 (7th Cir. 2013).[7]

When a copyright is registered within five years of the material's first publication, there is a presumption that the copyright is valid and the information contained in the registration certificate is accurate. 17 U.S.C. § 410(c). This presumption shifts the burden to the defendant to prove invalidity. *Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*, 549 F. App'x 913, 918 (11th Cir. 2013). Here, however, Haddley received his registration certificate in 2014, more than five years after he first published Scanning Enabler in 2007. (Am. Compl. ¶ 38, Ex. A.) As a result, Haddley bears the burden of showing that the copyright is valid and that the information contained in the certificate is accurate.

Defendants argue that Haddley's registration certificate incorrectly identifies himself as the author of Scanning Enabler. Defendants' argument is premised on the

---

[7] The Court notes that 17 U.S.C. § 411(b) provides a specific procedure for situations when a party claims that a registration certificate is invalid (a procedure the parties have failed to discuss and seemingly ignored). Under 17 U.S.C. § 411(b), "In any case in which inaccurate information [in the registration certificate] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." The purpose of the provision is to prevent courts from invalidating copyrights without receiving input from the Register—the very thing that Defendants invited the Court to do here. Despite the mandatory provision, courts can still determine the timing of when it will contact the Register. *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) ("[C]ourts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality."). Here, the Court will wait to contact the Register until there is a showing that ownership information was inaccurate and that Haddley provided the information with knowledge of the inaccuracy.

Work-for-Hire doctrine, which provides that generally an employer owns the copyrights for the materials that its employees create. *See generally* Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 5.03 (2016). In response, Haddley argues that even if he were an employee of Blue Duck Pty.—an entity that he solely owned—Blue Duck Pty. and he could have agreed that he would be the owner of the copyright.

In addressing whether Haddley owns the copyright for Scanning Enabler, the Court must first determine whether Australian or U.S. law applies. As a general matter, the law governing the substantive rights of the copyright holder is drawn from the country where the infringement took place. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 89 (2d Cir. 1998). The law governing ownership, however, is drawn from the country with the most significant relationship. *Id.* at 91; *see also Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) ("Initial ownership of a copyrighted work is determined by the laws in the work's country of origin."). Here, because the work was first published in Australia to a person then domiciled in Australia, Australia "is the appropriate source of law to determine the issues of ownership." *See Itar-Tass Russian News Agency*, 153 F.3d at 90 ("Since the works at issue were created by Russian nationals and first published in Russia, Russian law is the appropriate source of law to determine issues of ownership of rights.").

The parties provided only limited briefing on Australia's copyright-ownership law, but Defendants cite to the Australian Copyright Council as authoritative. (Defs.' MTD Memo. at 13.) According to the Australian Copyright Council, an employer will own the copyright for the software developed by an employee during the course of the employee's

8

usual duties.  Australian Copyright Council, *Software & Apps*, G050v12 (Dec. 2014), at 3.  Parties, however, can designate by agreement who owns the copyright.  Australian Copyright Council, *Ownership of Copyright*, G058v08 (Nov. 2014), at 1-2; *see also* Australian Copyright Council, *Software & Apps*, G050v12 (Dec. 2014), at 3 ("In most cases there will be an agreement . . . setting out who owns copyright in the material."); Australian Government, Attorney-General's Department, *Short Guide to Copyright*, at 7 ("All copyright ownership rules (except those that relate to moral rights) may be varied by agreement.").  Thus, Haddley and the Australian entity that he solely owned could have agreed that Haddley would retain the copyright for Scanning Enabler.  *See Jules Jordan Video, Inc. v. 144942 Can. Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (concluding that the owner of a "one-man shop" could decide whether he or the entity owned the copyright).  Because Haddley could have retained ownership in the copyright, the Court concludes that Plaintiff has adequately plead standing to bring his claims for copyright infringement.[8]  Thus, the Court denies Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

---

[8] Plaintiff still has the burden of demonstrating that an agreement existed between Haddley and Blue Duck Pty., Ltd regarding the copyright ownership of Scanning Enabler.  If Plaintiff fails to demonstrate such an agreement existed, the Court will reexamine whether Haddley's registration certificate is invalid because of a material misstatement.  *See Jules Jordan*, 617 F.3d at 1156 (noting that the district court allowed the case to proceed despite questions of fact regarding the registration certificate, but left open the opportunity to revisit the issue if the plaintiff failed to "perfect standing prior to the close" of the plaintiffs' case in chief).

## II. Motion to Consolidate

Plaintiff moves to consolidate this case with the Isanti Matter. Under Federal Rule of Civil Procedure 42(a), courts have broad discretion to consolidate pending actions that involve a common question of fact or law. Fed. R. Civ. P. 42(a); *see also Doe YZ v. Shattuck–St. Mary's Sch.*, Civ. No. 15-1151, 2016 WL 6594077, at *1 (D. Minn. Nov. 4, 2016). The party seeking consolidation bears the burden of showing that consolidation promotes judicial convenience and economy. *Shattuck–St. Mary's Sch.*, 2016 WL 6594077, at *1. But even if consolidation would promote judicial economy, consolidation is inappropriate when it unfairly prejudices a party. *Id.*

Here, Plaintiff argues that common issues of fact and law exist between the two cases. Defendants oppose the motion, arguing that the Isanti Defendants are in a different factual and legal position than the Defendants in this case. In addition, Defendants argue that the Isanti Defendants will be prejudiced because the parties have completed discovery in the Isanti Matter and that case is ripe for summary judgment.

The Court concludes that common issues of fact and law exist between this case and the Isanti Matter. The underlying facts of this case focus on NCT's use and replacement of Scanning Enabler in its CaseWorks product. The exact same facts underlie Haddley's claims in the Isanti Matter, where Haddley alleges that the Isanti Defendants exceeded the contracted-for number of licenses of Scanning Enabler. Moreover, both matters focus on whether the defendants infringed Haddley's copyrights. The Court is unpersuaded by Defendants' argument that the two cases are legally or factually distinct. Indeed, Defendants have moved to dismiss a claim in this case on the

basis that Haddley is bringing the exact same claim in the Isanti Matter. (*See* Defs.' MTD Memo. at 25 ("Plaintiff includes the *County of Isanti* Defendants as defendants in Count 3 . . . even though he has already made the same claims against them in the first lawsuit.").)

Having concluded that the two cases involve common issues of fact and law, the Court also finds that judicial economy would be furthered by consolidating the two cases. Plaintiff has brought similar claims against overlapping defendants in two separate matters. Litigating the matters separately would waste limited judicial resources. As a result, the Court concludes that judicial economy would be promoted by consolidating the two matters.

Despite finding that judicial economy will be promoted, the Court must also examine whether a party will be prejudiced by the consolidation. Defendants argue that consolidation will cause prejudice because the Isanti Matter has completed discovery while this case has only started. But Defendants cannot avoid consolidation simply because discovery is concluded, especially when much of the discovery will be overlapping. *See* 9A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 2382 (3d ed. 1998 & Supp. 2017) ("Actions pending at different stages of discovery may be consolidated, although any savings of time and expense well may be diminished."); *see also* Doc. No. 62, Tr. at 39 ([Plaintiff's Counsel]: "We won't have to do any more discovery with the [Isanti] Defendants, so they can just sit and wait for the rest of the discovery to complete as to the rest of the case."). In addition, the Isanti Defendants are defendants in both actions, and the parties are

11

represented by the same respective counsel in both actions. *See Shattuck–St. Mary's Sch.*, 2016 WL 6594077, at *2 (noting that consolidation was appropriate in part because counsel for both matters were the same). The Court therefore concludes that Defendants will not be unfairly prejudiced by consolidating the matters.

Thus, consolidating the Isanti Matter and this case is appropriate. Accordingly, Plaintiff is instructed to file a consolidated complaint not inconsistent with this order within thirty days of this order.

### III. Motion to Dismiss for Failure to State a Claim

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

12

level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Defendants move to dismiss Count 2 for the County Defendants. Count 2 is a claim based on the creation and use of a replacement product for Scanning Enabler. Specific to the County Defendants, Plaintiff's claim is premised on the County Defendants' downloading and use of the replacement product. "Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *accord Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 (8th Cir. 2004). Here, Plaintiff alleges that NCT, Mulcrone, and dataBridge infringed on Haddley's copyright by creating a replacement product for Scanning Enabler. (Am. Compl. ¶ 161-65.) One of the rights of a copyright owner is the right to create derivative products. 17 U.S.C. § 106 (2); *see also Mulcahy*, 386 F.3d at 852 ("One who violates the copyright owner's right to create derivative works is an infringer."). Haddley goes on to allege that the County Defendants infringed Plaintiff's copyright by using the replacement product. (Am. Compl. ¶¶ 167-68.) But merely buying an infringing product is not actionable. *Foreign & Domestic Music Corp. v. Licht*, 196 F.2d 627, 629 (2d Cir.

13

1952). Because Plaintiff's claim in Count 2 against the County Defendants is premised merely on purchasing an infringing product, Plaintiff fails to state a claim. Thus, the Court dismisses Count 2 against the County Defendants.

Defendants also move to dismiss Count 3 for the Isanti Defendants on the basis that Haddley has already brought the same claim against them in the Isanti Matter. Because the Court has ordered Plaintiff to file a consolidated complaint, the Court determines that Defendants' motion on this issue is moot. The Court therefore denies Defendants' motion to dismiss Count 3 for the Isanti Defendants.

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has adequately plead standing to pursue his copyright infringement claims, but the Court will revisit the issue if Plaintiff fails to prove that he is the owner of the copyright. The Court grants Defendants' Motion to Dismiss Count 2 for the County Defendants, and the Court denies Defendants' Motion to Dismiss Count 3 for the Isanti Defendants. The Court grants Plaintiff's Motion to Consolidate.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (Doc. No. [44]) is **GRANTED IN PART** and **DENIED IN PART** consistent with the memorandum above.

2. Count 2 of Plaintiff's Amended Complaint (Doc. No. [18]) is **DISMISSED WITH PREJUDICE** as to the County Defendants—the Minnesota counties of Kittson,

Mahnomen, Marshall, Norman, Polk, Red Lake, Roseau, Kandiyohi, Rice, Scott, Stearns, Washington, Becker, Clay, Dodge, Isanti, Otter Tail, Mower, Steele, and Waseca.

3. Plaintiff's Motion to Consolidate (Doc. No. [51]) is **GRANTED**.

4. This matter and *Haddley v. Isanti et al.*, Civil No. 15-2106 (DWF/LIB) are consolidated for all purposes under case number: Civil No. 16-1960 (DWF/LIB).

5. Plaintiff shall file a consolidated complaint for the two matters consistent with this order within thirty days of this order.

6. The caption for Civil No. 16-1960 (DWF/LIB) will remain the same.

7. Upon the filing of the consolidated amended complaint in Civil No. 16-1960 (DWF/LIB), the parties shall file a dismissal document in Civil No. 15-2106 (DWF/LIB).

8. All pending matters, including discovery, in Civil No. 15-2106 (DWF/LIB) are **STAYED** unless the parties jointly stipulate to the matters continuing.

Dated: April 25, 2017                s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge