UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Neil Leonard Haddley,                               Civil No. 16-1960 (DWF/LIB)

          Plaintiff,

v.                                                       **MEMORANDUM**
                                                          **OPINION AND ORDER**

Next Chapter Technology, Inc., a corporation;
Vaughn Mulcrone, an individual;
dataBridge, LLC, a limited liability company;
County of Becker, Minnesota;
County of Clay, Minnesota;
County of Dodge, Minnesota;
County of Isanti, Minnesota;
County of Otter Tail, Minnesota;
County of Mower, Minnesota;
County of Steele, Minnesota; and
County of Waseca, Minnesota;[1]

          Defendants.

---

Alexander Farrell, Esq., Hellmuth & Johnson PLLC, counsel for Plaintiff Neil Leonard Haddley.

Bruce H. Little, Esq., Sarah Pruett, Esq., Autumn Gear, Esq., and Heidi J.K. Fessler, Esq., Lindquist & Vennum LLP, counsel for Defendants.

---

[1]      In an Order dated April 25, 2017, the Court dismissed Count II insofar as it was asserted against County Defendants. (Doc. No. 63 at 14-15.) The Court notes that Counts I and III are not asserted against the following counties: Kittson, Mahnomen, Marshall, Norman, Polk, Red Lake, Roseau, Kandiyohi, Rice, Scott, and Stearns. Therefore, those counties are properly removed from the caption of this case.

## INTRODUCTION

This matter is before the Court on Defendants' Motion for Partial Summary Judgment (Doc. No. 103). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiff Neil Haddley is the creator and copyright holder of Scanning Enabler, a software program that allows users to scan paper documents into electronic form. (Doc. No. 69 (Consolidated Amended Complaint ("CAC")) ¶¶ 33, 35.) Scanning Enabler is activated by a license key. (*Id.* ¶ 42.) A license key system assigns a unique key number to each licensee and is intended to limit and control access to licensed software. (*Id.* ¶ 40.) In order to download Scanning Enabler, one must use a valid license key. (*Id.* ¶ 42.) Scanning Enabler resides on and is used at the server; workstations can connect to the server and access the software via ActiveX controllers. (CAC ¶ 70; Doc. No. 118 ("Farrell Decl.") ¶ 3, Ex. B ("Haddley Dep.") at 40.)[2]

Defendant Next Chapter Technology, Inc. ("NCT") developed and licenses its own product, CaseWorks, to various Minnesota counties. (CAC ¶ 6; Doc. No. 106 ("Little Decl.") ¶¶ 11-12, 14-15, Exs. 9-10, 12-13; Doc. No. 108 ("Mulcrone Decl.") ¶ 2, Ex. 1 ("Mulcrone First Action Decl.") ¶¶ 7-9). CaseWorks is an electronic document management system ("EDMS") that NCT installs on servers owned by its customer counties, who in turn use the software for essential government functions. (Mulcrone

---

[2] Thus, downloading the ActiveX control to a workstation is required before using Scanning Enabler. (Haddley Dep. at 148.)

First Action Decl. ¶ 9.) CaseWorks includes a scanning feature, and in 2012 and 2013, the scanning software component used in CaseWorks was Scanning Enabler.

In 2009, NCT entered into a re-seller arrangement for Scanning Enabler with Dark Blue Duck Solutions, LLC ("DBD"). (CAC ¶¶ 39, 46; Mulcrone First Action Decl. ¶ 14.) DBD is a company formed by Haddley for the purpose of selling licenses to Haddley's software. (*Id.* ¶ 39.) Per this agreement, from 2009 until 2012, Vaughn Mulcrone, the president and CEO of NCT, was authorized to re-sell Haddley's software products, including Scanning Enabler, to third parties. (*Id.* ¶ 46.) In 2011 and 2012, Haddley was working for NCT, first as a consultant and later as the Chief Technical Officer ("CTO") of NCT. (Mulcrone First Action Decl. ¶ 2.)

In 2012, NCT requested a license from DBD for the Scanning Enabler software to be installed at and used by Clay County.[3] (CAC ¶¶ 65, 66, 80, 81; Mulcrone Decl. ¶¶ 4, 5, Exs. 3, 4; Mulcrone First Action Decl. ¶¶ 3, 16.) Clay County shared a server environment with Becker, Otter Tail, and later Isanti Counties. (Mulcrone First Action Decl. ¶ 3; CAC ¶¶ 72, 83, 90.) In 2013, NCT requested a license for the Scanning Enabler software to be installed at and used by Steele County. (CAC ¶¶ 91, 92; Mulcrone Decl. ¶¶ 6, 7, Exs. 5, 6.) Steele County shared a server environment with Waseca, Mower, and Dodge Counties. (Mulcrone First Action Decl. ¶ 4.) Defendants assert that these licenses were unrestricted single server licenses designated for

---

[3] The parties dispute whether NCT purchased the license for itself or acquired the license for its county customers as a re-seller of Haddley's software.

3

installation on production servers hosted at both Clay and Steele Counties. (Mulcrone Decl. ¶¶ 4-9, Exs. 3-8 (License Keys for Clay and Steele County; invoices for the License Keys noting the purchase of "Scanning Enabler Server" and "Unrestricted License for one front-end server").) Defendants assert that, when working as a consultant for or an employee of NCT, Haddley authorized and personally participated in the sharing and use of Scanning Enabler by County Defendants in the above server environments. (Mulcrone First Action Decl. ¶¶ 2-4.)

Haddley disputes that he knew of and acquiesced to Defendants' unrestricted use of Scanning Enabler in the shared server communities. For example, Haddley claims that he protested the Isanti County Defendant's use of his software without a license. Specifically, Haddley testified that when he was on-site in Fergus Falls in December 2012 (when the Otter Tail workstations were connected to the Clay server), he confronted John Dinsmore of Otter Tail County and expressed that he was unhappy with the configuration and indicated that they needed to purchase additional licenses. (Haddley Dep. at 165-66, 169.) In addition, Haddley asserts that after he refused to agree to a proposal put forward by NCT that affected Haddley's licensing of Scanning Enabler, Haddley's employment was terminated by NCT. (CAC ¶¶ 97-102.) Haddley alleges that NCT then retained Defendant dataBridge, LLC to help create a replacement software product called NCT Scan. (*Id.* ¶¶ 129-30.) Also, in October 2014, Haddley sent Notice of Claim letters to the County Defendants indicating his belief that they were using copyrighted works without his permission. (*Id.* ¶¶ 137-38, Ex. C.)

4

In this action, Plaintiff brings three claims: (1) copyright infringement against NCT, Mulcrone, and County Defendants for exceeding the licenses Hadley sold by permitting the eight County Defendants, instead of just Steele and Clay Counties, to use the Scanning Enabler at the Clay and Steele County servers; (2) copyright infringement against NCT, Mulcrone, and dataBridge LLC for creating an infringing derivative work based on the Scanning Enabler[4]; and (3) a claim under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A) and § 1202(b)(1) against NCT, Mulcrone, and the County Defendants. Defendants now move for partial summary judgment seeking judgment in their favor on Counts I and III.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

---

[4] Defendants do not move for summary judgment on Count II, which is brought against Defendants NCT, Mulcrone, and dataBridge, for copyright infringement based on the alleged creation of a derivative of Scanning Enabler. (CAC ¶¶ 151-64.)

5

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Count I – Copyright Infringement

In Count I, Haddley asserts that Defendants infringed his copyright in the Scanning Enabler software by making copies available to unlicensed parties who then downloaded the software. Specifically, Haddley argues that only Clay and Steele Counties were licensed to load Scanning Enabler on their licensed servers and that the connection of each server or workstation from the other six counties constitutes infringement. Haddley submits that Clay and Steele counties contributed to that infringement by allowing the other counties access, and that NCT and Mulcrone contributed to the infringement of all County Defendants.

Defendants argue that they are entitled to summary judgment on Haddley's copyright infringement claim because the operative software licenses were unrestricted and, therefore, did not limit the number and identities of servers and workstations that

6

could connect to the Clay and Steele County servers. In addition, Defendants argue that Haddley knew that NCT installed the software on the County Defendant servers and that Haddley personally helped in setting up the server-sharing arrangement amongst the counties. Defendants submit that Haddley's active participation in the installation plus his silence ratified the server-sharing arrangement.

At the heart of Defendants' motion is the assertion that, as a matter of law, they were licensed to use the Scanning Enabler software. An express license is a basis for finding non-infringement. *See, e.g.*, *Sony Corp of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("[A]nyone who is authorized by the copyright owner to use the copyrighted work . . . is not an infringer of the copyright with respect to such use."); *Computer Assocs. Int'l, Inc. v. State Street Bank & Trust*, 789 F. Supp. 470, 472 (D. Mass. 1992) ("A use of an authorized copy of copyrighted subject matter ordinarily is not infringing."). The parties dispute the following issues that are relevant to Haddley's copyright infringement claim: whether NCT acquired a license to Scanning Enabler (as opposed to Clay and Steele Counties), which particular agreement(s) governed the parties' use of the software, and whether any license authorized the installation of Scanning Enabler on servers (and connecting workstations) beyond the servers and workstations of Clay and Steele Counties.

The Court first turns to the issue of who was the licensee of the Scanning Enabler software and the related issue of which agreement governs. In support of their motion for summary judgment, Defendants claim that the licenses were sold to NCT, and not to Clay and Steele Counties. In support, Defendants point to invoices addressed to "The

7

Mulcrone Group"—NCT's former name. (Mulcrone Decl. ¶¶ 8, 9, Exs. 7, 8.) While these invoices suggest that NCT held the licenses for Scanning Enabler and that software license agreements governed, Haddley points to conflicting evidence, namely that Mulcrone believed that the operative license agreement could be one posted on the DBD website. (Doc. No. 147 ("Farrell Decl. II") ¶ 2, Ex. A ("Scanning Enabler 4.x Software License Agreement"); *id.* ¶ 3, Ex. B at 12-13.) The Scanning Enabler 4.x Software License Agreement notes that it would bind the software developer and the "user," and Haddley argues that the County Defendants, and not NCT, are the users of the software. In addition, Haddley argues that NCT was actually operating under the re-seller agreement and his Employment Agreement with NCT and that under those agreements Haddley retained ownership of his software. (*See* Farrell Decl. ¶ 5, Ex. D.)

Second, Defendants argue that the licenses for Scanning Enabler were not limited to any number of workstations or to workstations owned by Clay and Steele County. Therefore, Defendants argue that they could permissibly share the Scanning Enabler licenses between multiple counties and their workstations. In support, Defendants again point to License Keys and invoices that state that the licenses were "unrestricted" for "one front-end server." (Mulcrone Decl.¶¶ 6, 7, 8, 9, Exs. 5, 6, 7, 8.) Haddley, however, disputes that the licenses were "unrestricted" so as to allow the additional counties (and their corresponding workstations) to download Scanning Enabler. Instead, Haddley argues that the licenses prohibited the connection of additional servers at other counties and that his expectation was that NCT would assign the licenses to additional counties. (Haddley Dep. at 58.) For example, Haddley asserts that he did not grant unrestricted

licenses and that the licenses were for a single user. (Doc. No. 117 ("Haddley Decl."))
¶ 12.) Haddley maintains that he always granted Scanning Enabler licenses on a per-customer/per-server basis and points to evidence that this type of license (per-customer/per-server) is customary in the industry. (Farrell Decl. II ¶ 4, Ex. C at ¶ 54.) Moreover, Haddley points to evidence that the Scanning Enabler license found on the DBD website--the Scanning Enabler 4.x Software License Agreement--states that the licensee may not "duplicate . . . license or sublicense" the Scanning Enabler Software. (Farrel Decl. II ¶ 2, Ex. A at 2.)

After a careful review of the record, and viewing the evidence in the light most favorable to Haddley, the Court concludes that numerous questions of fact exist as to all of the above issues. It will be up to a fact-finder to determine the fact issues underlying whether NCT acquired a license to Scanning Enabler, which particular agreement(s) governed, and whether the relevant licenses were unrestricted such that they allowed multiple counties to share the Scanning Enabler software on the Clay and Steele County servers.

Defendants also argue that Haddley granted Defendants an implied license to Scanning Enabler or that he should be estopped from denying the existence of an implied license. Defendants point to evidence that Haddley worked with NCT to install CaseWorks and to link the production servers to workstations in other counties, Haddley knew that the County Defendants were sharing servers, and until October 2014 (one year after the last CaseWorks installation), Haddley acquiesced. Moreover, Defendants point out that in 2012 and 2013, Haddley communicated with NCT and NCT's customers,

made no demands for separate licenses, and never objected to the installation of Scanning Enabler or the ActiveX controls. Defendants also submit that Haddley issued new licenses to NCT for the Steele County server when he was fully aware of the server-sharing involving the Clay County server, and that Haddley personally connected workstations from other counties to the Steele County server. Defendants assert that Haddley's conduct left Defendants with the impression that they could rightfully share access to Scanning Enabler as part of CaseWorks.

Haddley disputes that he knew of and ignored Defendants' alleged infringement. Instead, Haddley submits that he understood that the additional counties would need to acquire their own licenses for Scanning Enabler. In addition, Haddley testified that NCT assured Haddley that each license would only be used by the individual licensed counties. (Haddley Dep. at 131-33.) Moreover, Haddley claims that he relied on NCT, as a re-seller, to collect money from counties using Scanning Enabler. (Farrell Decl. II ¶ 5, Ex. D ("Haddley 2018 Dep.") at 44-45.) Haddley also disputes that, in his role at NCT, he was in a position to know which counties were using Scanning Enabler as part of CaseWorks and that he did not implement any client engagements. (*Id*. at 84, 87-88.) Haddley also submits that he repeatedly objected to the non-licensed use of the software and that, ultimately, he was terminated because of his objection. Haddley points to evidence that he specifically challenged the server and license sharing configuration when he was on-site in Fergus Falls in December 2012, and that he sent letters to each of the counties after his termination to challenge the unauthorized copying of the software.

A non-exclusive implied license can arise based on the copyright holder's implied consent. *See Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 831 (8th Cir. 1992); *Parker v. Yahoo!, Inc.*, Civ. No. 07-2757, 2008 WL 4410095, at *3 (E.D. Pa. Sept. 25, 2008) (noting that a copyright owner may grant a non-exclusive license expressly or impliedly through conduct). Such conduct might include silence or lack of objection, especially if the copyright holder knows of and encouraged the allegedly infringing use. *Parker*, 2008 WL 4410095, at *3. Similarly, "[a] Plaintiff is estopped from asserting a copyright claim if he has aided the defendant in infringing or otherwise induced it to infringe or has committed covert acts such as holding out . . . by silence or inaction." *Rouse v. Walter & Assocs.*, 513 F. Supp. 2d 1041, 1067-68 (S.D. Iowa 2007) (citation omitted).

Here, viewing the evidence in the light most favorable to Haddley, the Court concludes that there are fact issues that preclude summary judgment on the issue of implied consent. In particular, a reasonable juror could conclude that Haddley did not impliedly consent to the allegedly infringing use of the software. For that same reason, fact issues also exist to preclude summary judgment on the issue of whether Haddley is estopped from denying the existence of an implied license.

### III. DMCA Claim

In Count III, Haddley asserts a claim of copyright management circumvention against Defendants, alleging that in order to download Scanning Enabler, a licensee must have a valid license key and that Defendants NCT and Mulcrone acted in concert with County Defendants to bypass the license key system allowing the distribution of unauthorized copies of Scanning Enabler. (CAC ¶¶ 165-175.) Haddley asserts that

11

Defendants violated the DMCA by allowing eight separate counties to connect to workstations to two host production servers. (*Id.*)

Defendants argue that this claim should be dismissed because each time one of the County Defendants connected to a workstation, it had the authority to do so via NCT's licenses. In addition, Defendants argue that the fact that Haddley himself assisted in connecting the servers demonstrates that they had authority to use Scanning Enabler. Finally, Defendants argue that under the anti-circumvention provision of the DMCA, Haddley was required to have applied a technological measure to prevent unauthorized access. Defendants submit that they did not take any unauthorized technological steps to gain unauthorized access to Scanning Enabler, but rather that they used the ActiveX control to connect the workstations to the licensed servers and that they had Haddley's authority to do so. More specifically, Defendants submit that using ActiveX control is not a technological step under the DMCA because ActiveX is designed to provide, not prevent, access as a prerequisite step to use the Scanning Enabler software.

Under the DMCA's anti-circumvention provision, "[n]o person shall circumvent a technological measure that effectively controls access to a [copyrighted] work." 17 U.S.C. § 1201(a)(1)(A). Circumvention means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id*. § 1201(a)(3)(A). A "technological measure" is one that "'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to

gain access to the work." *Id.* § 1201(a)(3)(B). The DMCA's anti-circumvention provisions provide property owners new grounds for liability in the context of unauthorized access of copyrighted material. *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1194 (Fed. Cir. 2004). The statute requires plaintiffs to prove circumvention of technological measures controlling access to copyrighted work and lack of authority of the copyright owner. *Id.* (citing 17 U.S.C. § 1201). Here, the Court has already determined that fact issues remain with respect to the question of whether Defendants were authorized (via a license) to use the Scanning Enabler software. In addition, the Court concludes that fact issues remain as to whether any of the Defendants circumvented technological measures controlling access to Scanning Enabler. Without authority under a license, a reasonable juror could find that Defendants circumvented a technological measure to use Scanning Enabler by using the license key system. Therefore, summary judgment is denied as to Count III.

## IV. County Defendants

Defendants also argue that the County Defendants are entitled to summary judgment because they did not act volitionally. In particular, Defendants assert that County Defendants were not aware that Scanning Enabler existed separately from the CaseWorks software, the product that NCT licensed to County Defendants. Defendants assert that NCT is the party that included Scanning Enabler in the CaseWorks product, Clay and Steele Counties are simply hosts of the licensed software, the remaining County Defendants accessed the hosts and enabled the scan by downloading the ActiveX

controller, and NCT controlled the installation of CaseWorks at Clay and Steele Counties during the period that Scanning Enabler was used.

Haddley points out that he does not allege that Clay and Steel Counties' systems were unknowingly used to make copies of Scanning Enabler without the counties' consent. Instead, Haddley claims that Clay and Steele Counties knew of and had control over what software was on their system and allowed other unlicensed counties to share their software. In addition, Haddley claims that the alleged unlicensed counties then created additional unlicensed copies on their own systems.

The Court concludes that, on the record before it, it is premature to dismiss the County Defendants. There are still open factual questions over whether the County Defendants could use the software under a license. And if it is later determined that their use was not licensed, fact issues remain as to whether their use of Scanning Enabler was outside their knowledge or control.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (Doc. No. [103]) is **DENIED**.

Dated: September 26, 2018            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge