Neil Leonard Haddley,   Civil No. 16-1960 (DWF/LIB)

      Plaintiff,

v.   **MEMORANDUM OPINION AND ORDER**

Next Chapter Technology, Inc., a corporation;
Vaughn Mulcrone, an individual;
dataBridge, LLC, a limited liability company;
County of Becker, Minnesota; County of Clay,
Minnesota; County of Dodge, Minnesota;
County of Isanti, Minnesota; County of
Otter Tail, Minnesota; County of Mower,
Minnesota; County of Steele, Minnesota;
and County of Waseca, Minnesota,

      Defendants.

---

Alexander Farrell, Esq., Hellmuth & Johnson PLLC, counsel for Plaintiff Neil Leonard Haddley.

Bruce H. Little, Esq., Autumn Gear, Esq., and Heidi J.K. Fessler, Esq., Barnes & Thornburg LLP, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Defendants Next Chapter Technology, Inc.'s ("NCT"), Vaughn Mulcrone's, and dataBridge LLC's[1] Second Motion for Partial Summary Judgment (Doc. No. 177 ) and a Motion for Partial Summary Judgment (Doc.

---

[1] While County Defendants do not move for summary judgment, the Court refers to Defendants generally throughout this order unless there is a need for more specificity.

No. 182) brought by Plaintiff Neil Leonard Haddley ("Plaintiff" or "Haddley"). For the reasons set forth below, the Court grants Defendants' motion and denies Plaintiff's motion.

## BACKGROUND

The facts of this case were thoroughly set forth in a prior order denying Defendants' prior motion for summary judgment dated September 26, 2018 (the "September Order"). (Doc. No. 197.) Many of the previously recited facts are relevant to the present motions. The Court will summarize and supplement the facts as necessary.

Haddley is the creator and copyright holder of Scanning Enabler, a software program that allows users to scan paper documents into electronic form. (Doc. No. 69 (Consolidated Amended Complaint ("CAC")) ¶¶ 33, 35.) Scanning Enabler contains two main components: the Server Software and the ActiveX Control.[2] Scanning Enabler resides on and is used at the server; workstations can connect to the server and access the software via ActiveX controllers. In order to download Scanning Enabler, one must use a valid license key. (*Id.* ¶ 42.)

NCT licenses CaseWorks, an electronic document management system ("EDMS"), to Minnesota counties. CaseWorks includes a scanning feature. In 2009, NCT entered into a re-seller arrangement for Scanning Enabler with Haddley's company, Dark Blue Duck Solutions, LLC ("DBD"). In 2011, Haddley began working for NCT,

---

[2]     ActiveX Control must be downloaded to a workstation before using Scanning Enabler.

first as a consultant and later as Chief Technical Officer ("CTO"). In 2012 and 2013, the scanning software component used in CaseWorks was Scanning Enabler, which was licensed from DBD.[3]

Scanning Enabler was installed on servers in Clay and Steele Counties. Clay County shared a server environment with Becker, Otter Tail, and Isanti Counties. Steele County shared a server environment with Waseca, Mower, and Dodge Counties. Defendants claim that the Scanning Enabler licenses were unrestricted single-server licenses designated for installation on production servers hosted at both Clay and Steele Counties and allowing for other counties in the shared environments to download the software. Defendants also assert that Haddley authorized and personally participated in the sharing and use of Scanning Enabler by County Defendants in the above server environments. Haddley, however, disputes that he knew of and acquiesced to the unrestricted use of Scanning Enabler on the shared server environments. Haddley also asserts that he issued two licenses each to Clay and Steele Counties, through NCT as Haddley's reseller, and that the licenses did not permit Clay and Steele Counties to allow other counties to download the software.

NCT terminated Haddley in October 2013 and asserts that it learned that Haddley was attempting to enter the market to compete with NCT. NCT submits that, in response, it developed its own scanning module based on software development kits ("SDKs") that it purchased from Atalasoft, a commercial vendor, and commissioned dataBridge LLC to

---

[3] The parties dispute who held the licenses, NCT or Clay and Steele Counties.

complete the development of the scanning module. In the spring of 2014, NCT introduced its scanning module, NCT SCAN, into new releases of CaseWorks. In November of 2014, NCT disabled Scanning Enabler in existing installations and replaced it with NCT SCAN.

In this action, Plaintiff brings three claims: (1) copyright infringement against NCT, Mulcrone, and County Defendants for exceeding the licenses Haddley sold by permitting the eight County Defendants, instead of just Steele and Clay Counties, to use the Scanning Enabler at the Clay and Steele County servers; (2) copyright infringement against NCT, Mulcrone, and dataBridge LLC for creating an infringing derivative work based on the Scanning Enabler; and (3) a claim under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A) and § 1202(b)(1), against NCT, Mulcrone, and the County Defendants. NCT asserts the following counterclaims: (1) breach of employment agreement; (2) breach of duty of loyalty; and (3) unfair competition.

Haddley now moves for partial summary judgment in his favor on Counts I and III, as well as on NCT and Mulcrone's counterclaims. Defendants also move for partial summary judgment in their favor on Count II of Haddley's CAC.

## DISCUSSION

I. **Legal Standard**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.

*Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Plaintiff's Motion

### A.     Count I  (Copyright Infringement)

In Count I, Haddley asserts that Defendants (NCT, Mulcrone, and County Defendants) infringed his copyright in the Scanning Enabler software by distributing and making copies of Scanning Enabler software available to unlicensed parties who then downloaded the software.[4]

---

[4]     This Count also includes the allegation that Defendants infringed Plaintiff's copyright by distributing derivatives of Scanning Enabler. Because the Court concludes in Section III below that Plaintiff's claim for copyright infringement based on derivate works is properly dismissed, that argument is no longer viable as a component of Count I.

5

Defendants previously moved for summary judgment on these claims, arguing that, as a matter of law, they were licensed to use the Scanning Enabler software. In the September Order, the Court explained that numerous fact disputes exist as to the following issues: who held the licenses of the Scanning Enabler software—NCT or Clay and Steele Counties; which particular software agreement(s) governed; and whether the relevant licenses were unrestricted such that they allowed multiple counties to share the Scanning Enabler software. The Court also concluded, on Defendants' motion, that fact issues preclude summary judgment on the issue of implied consent, and in particular whether Haddley granted Defendants an implied license to use the software and whether Haddley is estopped from denying the existence of an implied license.

Plaintiff now moves for summary judgment on this claim as it is asserted against the County Defendants. Plaintiff maintains that the Scanning Enabler software was licensed per customer and per server and that only two counties, Clay and Steele, had licenses. Therefore, Plaintiff argues that downloads of Scanning Enabler at workstations by County Defendants were not licensed and constitute copyright infringement.

This motion, in large part, is a mirror-image of Defendants' prior motion. As with the prior motion, this claim centers on the issue of whether Defendants were properly licensed to use the Scanning Enabler software. It is, therefore, not surprising that the issues and analysis here overlap significantly with those discussed in the September Order. For example, Plaintiff's present motion is premised on his claim that he sold licenses for Scanning Enabler directly to Clay and Steele counties, and not to NCT. However, as explained in the September Order, fact issues remain as to whether NCT

6

acquired a license to Scanning Enabler and which particular agreement(s) governed. In addition, Plaintiff argues that he sold licenses for the Scanning Enabler software per customer and per server and, therefore, that any downloads at workstations by counties other than Clay and Steele county were unlicensed. Defendants maintain that NCT is the entity licensed to use Scanning Enabler. And as they did in the prior motion, Defendants argue that the licenses were "unrestricted" and do not limit the number of workstations that the licensee is permitted to connect to each server. In the prior order, the Court explained that fact issues exist as to whether the relevant licenses were unrestricted such that they allowed multiple counties to share the Scanning Enabler software on the Clay and Steele County servers. Finally, Defendants maintain that Plaintiff granted implied licenses and is estopped from enforcing them. Again, the Court previously determined that fact issues preclude summary judgment on this issue.

The Court has carefully reviewed Plaintiff's motion for summary judgment on his copyright claim in Count I and the parties' competing arguments. The Court concludes that the same fact issues discussed in the prior order remain. As explained in the September Order, a fact-finder will be appropriately tasked with determining whether NCT or Clay and Steele Counties were licensed to use Scanning Enabler, whether the terms of the license were exceeded, and whether Plaintiff granted implied licenses and is estopped from denying them.[5] Thus, the Court denies summary judgment on Count I.

---

5   In opposition, Defendants also argue that Plaintiff's Copyright registration is defective because it incorrectly identifies the author and that, therefore, the Court lacks jurisdiction. However, the Court previously explained that the holder of a foreign

## B. Count III (Copyright Management Circumvention)

In Count III, Haddley asserts a claim of copyright management circumvention against Defendants. Under the DMCA's anti-circumvention provision, "[n]o person shall circumvent a technological measure that effectively controls access to a [copyrighted] work." 17 U.S.C. § 1201(a)(1)(A). Circumvention means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id*. at § 1201(a)(3)(A).

Haddley alleges Defendants NCT and Mulcrone acted in concert with County Defendants to bypass the license key system allowing the distribution of unauthorized copies of Scanning Enabler. (CAC ¶¶ 165-175.) As explained above, fact issues exist as to whether Defendants were licensed to use Scanning Enabler and to the scope of the relevant licenses. Because a claim under the DMCA requires circumvention to occur "without the authority of the copyright owner," summary judgment cannot be granted. Should a fact-finder conclude that NCT was licensed to use Scanning Enabler and that Defendants did not exceed the terms of the licenses or otherwise act inconsistently with the license, or that Plaintiff impliedly licensed each county to connect workstations to the servers, then Haddley's DMCA claim will fail. The Court denies summary judgment on Count III.

---

copyright does not need to register before filing suit, unless he is seeking statutory damages or attorney fees. (Doc. No. 63 at 6.)

### C. NCT's Counterclaims

NCT asserts three Counterclaims: (1) breach of the employment contract between Haddley and NCT; (2) breach of duty of loyalty; and (3) unfair competition. (Doc. No. 82.) Haddley moves for summary judgment on all three Counterclaims. The Court discusses each in turn.

#### 1. Breach of Contract

NCT alleges that Haddley breached the terms of his Employment Agreement when serving as NCT's CTO. Specifically, NCT alleges that as CTO, Haddley had a duty to confirm that NCT and its customers, including the County Defendants, were fully licensed for CaseWorks and to assure compliance with its licenses. (*Id.* ¶ 58.) Moreover, NCT alleges that Haddley permitted NCT to enter into unrestricted, single-server licenses with DBD that (as Haddley claims) would not permit more than one county to access, and personally installed the software on the Clay and Steele County servers, yet did not claim that the installations were unlicensed for more than a year. (*Id.* ¶¶ 56-63.) NCT argues that, as NCT's CTO, Haddley had a duty to notify NCT and to obtain appropriate licenses, but that he failed to do so. As a result, NCT claims it will be damaged if it is required to pay damages in this lawsuit. Haddley, however, argues that summary judgment is appropriate on this breach of contract claim because his Employment Agreement with NCT does not specify that he has a duty to evaluate the licensing necessary for NCT's customers. Instead, Haddley maintains that it was the County Defendants' duty to ensure software licensing compliance.

To succeed on a breach-of-contract claim, a plaintiff must prove that: (1) the parties formed a valid contract; (2) the plaintiff performed any conditions precedent to its right to demand the defendant's performance under the contract; and (3) the defendant breached the parties' contract. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). When a contract is unambiguous, "interpretation is a question of law." *Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 851 (8th Cir. 2008) (internal quotation marks omitted). However, if the contract is ambiguous, or reasonably susceptible of more than one meaning, then "the meaning of the contract becomes a question of fact, and summary judgment is inappropriate unless the evidence of the parties' intent is conclusive." *Id.* (citation omitted).

Here, the parties dispute whether Haddley's Employment Agreement required Haddley to evaluate the licensing necessary for NCT's customers. The Employment Agreement provides that NCT would employ Haddley as its CFO, who would in turn perform the following services: business analysis and technical leadership; develop software and documentation; conduct testing/quality assurance of software; implement client engagements; manage NCT's development personnel as directed by NCT's President; work with clients and other persons specified by NCT's President; and perform other services, tasks, duties or functions as may be requested by NCT's President. (Doc. No. 185 ("Farrell Decl.") ¶ 16, Ex. O ("Employment Agreement") at 1.)

The Employment Agreement also provides:

> **BEST EFFORTS OF EMPLOYEE**, [HADDLEY] agrees to perform faithfully, industriously, and to the best of [HADDLEY'S] ability, experience, and talents, all of the duties that may be required by the express

10

and implicit terms of this Agreement, to the reasonable satisfaction of [NCT]. Such duties will be provided at such place(s) as the needs, business, or opportunities of [NCT] may require from time to time. [HADDLEY] will devote his full business time to the rendition of such Services, subject to absences for customary vacations and for temporary illness . . .

(*Id.* at 2.)

The Court concludes that summary judgment on this claim is premature. Material provisions of the Employment Agreement are reasonably susceptible to more than one meaning and the parties' intent regarding Haddley's duties with respect to licensing is unclear. Therefore, the Court denies summary judgment on NCT's breach of contract counterclaim.

2. Breach of Duty of Loyalty

Under Minnesota law, employees owe a duty of loyalty to their employers. *See Marn v. Fairview Pharmacy Servs. LLC*, 756 N.W.2d 117, 121 (Minn. Ct. App. 2008); *see also Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987) (stating that the employee's duty of loyalty prohibits an employee from competing with the employer while still employed). Here, NCT alleges that as an employee of NCT, Haddley had a duty not to install and download software in the electronic environments of customers that were unlicensed. (Doc. No. 82 ¶ 66.) NCT asserts that if, while working for NCT, Haddley was aware that additional licenses were required, he owed a common law duty of loyalty to advise NCT, instead of remaining silent and later seeking licensing fees. Haddley, however argues that if it is determined that Isanti, Becker, Otter Tail, Waseca, Mower, and Dodge counties did not purchase licenses to Scanning
11

Enabler and that the downloads to these counties' workstations exceeded the relevant licenses in this case, then this counterclaim must fail.

Viewing the evidence in the light most favorable to Defendants, the Court concludes that fact issues exist as to whether Haddley breached a duty of loyalty to NCT. A reasonable juror could conclude that as an employee of NCT, Haddley was obligated to advise NCT that additional licenses were required to download Scanning Enabler at workstations at counties other than Clay and Steele, and that he breached that duty by failing to so advise and later seeking damages for those downloads. Therefore, the Court denies summary judgment on this counterclaim.

### 3. Unfair Competition

Unfair competition is not a tort with specific elements, but instead describes a general category of torts that courts recognize to protect commercial interests. *Rehabilitation Specialists, Inc.*, 404 N.W.2d at 305-06. Unfair competition can cover claims such as tortious interference with contract, misuse of trade secrets, and an employee's breach of their fiduciary duties. *See id.*

NCT argues that while Haddley was still working at NCT, he attempted to compete in the county EMDS market by contacting counties he knew to be NCT customers and demanding that they purchase licenses, despite the fact that NCT had already entered into CaseWorks licenses with the counties. NCT further alleges that it was required to litigate on behalf of the counties and is entitled to recover full and reasonable amounts expended in doing so. Haddley argues that if the Minnesota counties contacted by Haddley were not licensed from NCT, this counterclaim must fail.

For the reasons discussed above, fact issues remain with respect to whether County Defendants were properly licensed to use Scanning Enabler. If a jury determines that the County Defendants were properly licensed, the jury could reasonably conclude that Haddley's attempt to collect a second license fee constitutes unfair competition. Therefore, summary judgment is denied on this claim.

4. Damages

Haddley argues that in support of its breach of contract and unfair competition counterclaims, NCT has failed to make the required showing of damages or actual injury. Specifically, Haddley argues that there is no showing that NCT lost any revenue from any of the County Defendants based on Haddley's contact with them or based on any of Haddley's conduct. NCT submits that its claimed damages for its counterclaims are: (1) any damages awarded against Defendants based on Haddley's claim that additional Scanning Enabler licenses were required; and (2) the attorney fees and other costs NCT was compelled to incur to defend defendants. NCT further submits that it has incurred significant attorney fees defending its customers. The Court concludes that NCT's claim for damages survives summary judgment.

Haddley also argues that the recovery sought in the breach of duty of loyalty claim is redundant to NCT's counterclaims for breach of contract and unfair competition and, therefore, is properly dismissed. Generally under Minnesota law, tort claims cannot arise from a contractual relationship. *See St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, 994 F. Supp. 2d 1033, 1051-52 (D. Minn. 2014) (dismissing a duty of loyalty claim that is redundant to, and seeks the same damages as, its breach of contract claim). However, it

is premature to determine whether the nature of NCT's duty of loyalty claim is so intertwined with the breach-of-contract claim so as to require the former's dismissal.

## III. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on Count II of the CAC. In Count II, Haddley asserts a claim for "Copyright Infringement: Derivative of Scanning Enabler" against NCT, Mulcrone, and dataBridge. Specifically, Haddley alleges that he is the sole author and copyright holder of Scanning Enabler with exclusive rights to prepare derivative works, NCT had access to Scanning Enabler software, NCT engaged dataBridge to create and prepare NCT SCAN, and NCT SCAN is substantially similar to—and a derivative work of—Scanning Enabler. Both NCT and dataBridge deny that they had access to any Scanning Enabler source code or that NCT SCAN is a derivative work.

In September 2014, Plaintiff registered the United States copyright in Scanning Enabler for the original 2007 version of Scanning Enabler that was created in Australia. (Doc. No. 1, Ex. A ("Certificate of Registration" ("COR")). In compliance with the requirement that each copyright registration include a "deposit copy" of the work registered, 17 U.S.C. § 408(b)(3) ("in the case of a work first published outside the United States, one complete copy or phonorecord as so published"), Haddley deposited selected portions of source code as identifying material of the copyright. (Doc. No. 147 ("Farrell Decl.") ¶ 5, Ex. D ("Haddley Dep.") at 55-56.) Haddley asserts that the portions were selected as identifying material portions of the code common to the 2007 version plus the copy was in his possession in 2014: "The software deposit was a very small part

14

of the total code base. And I deliberately attempted to find old sections of code that did not include any bug fixes or enhancements." (*Id.*) The record also demonstrates that Haddley has changed the source code since 2007. (*Id.* at 42-43, 52, 53.) In addition, Haddley testified that he created a version (the "blessed release") for NCT. (Doc. No. 211 ("Little Decl.") ¶ 2, Ex. 1 ("Haddley Dep. II") at 11-12.)

To establish copyright infringement, Plaintiff must establish (1) ownership of a valid copyright; and (2) copying of original elements of the work. *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 (8th Cir. 2004). Because direct evidence of copying is rarely available, infringement is normally established circumstantially by proof of access and substantial similarity. *See Moore v. Columbia Pictures Indust., Inc.*, 972 F.2d 939, 941-42 (8th Cir. 1992). The statutory rights of a copyright owner include the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). The Copyright Act broadly defines a derivative work as,

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.

17 U.S.C. § 101. One who violates the copyright owner's right to create derivative works is an infringer. *See* 17 U.S.C. § 501(a).

The 2007 source code is relevant because it forms the basis of Plaintiff's copyright infringement claim in Count II. Plaintiff submitted a "deposit copy" of the work, but did not submit a complete copy of the 2007 source code. Plaintiff represents that Defendants have a copy of Scanning Enabler source code exactly as it existed on Clay and Steele

15

County servers, as well as the deposited Scanning Enabler code from the 2014 registration. However, the record demonstrates that Plaintiff has made changes to the Scanning Enabler code while working in the United States. Plaintiff acknowledges that he made changes to the software but claims that the revisions were minor and did not amount to copyrightable changes or create a derivative work.

Defendants cite to caselaw supporting the proposition that registration of a claim on an original work does not create subject matter jurisdiction with respect to a suit for infringement of the original's unregistered derivative. *See KnowledgeAZ, Inc. v. Jim Walters Res., Inc.*, 617 F. Supp. 2d 774, 788 (S.D. Ind. 2008) (explaining that the owner of a derivative work must register its copyright if it seeks to pursue an action based on the infringement of the new work). Therefore, the Court does not have jurisdiction over any claims based on unregistered derivative works.

Plaintiff, however, submits that its copyright infringement claim based on derivative works is premised on Defendants' creation of a derivative of the 2007 source code. In *Mohr v. Science & Eng'g Servs., Inc.*, the Court explained that a copyright owner of a registered computer program could not prove that the defendant had infringed his copyright where the copyright owner could not produce a copy of the source code as it existed when he registered his copyright. 204 F. Supp. 3d 1281, 1298 (N.D. Ala. 2016). Instead, the Court explained that the copyright owner hit an "evidentiary roadblock" because it prevented the Court from examining the source code and performing the process of filtering out all unprotectable material, which is required to prove substantial similarity. *Id*. at 1297-98; *see also InDyne, Inc. v. Abacus Tech. Corp.*,

16

876 F. Supp. 2d 1278, 1291, 1293 (M.D. Fla. 2012) (explaining that a copyright owner's failure to produce source code prevents the necessary comparison to establish substantial similarity, an essential element of a copyright infringement claim), *aff'd* 513 Fed. Appx. 858 (11th Cir. 2013). The reasoning behind these decisions is persuasive. Here, Plaintiff's copyright claim in Count II is based on 2007 source code, a complete copy of which Plaintiff has not produced. Without such a copy, there can be no meaningful comparison or analysis of the asserted copyrighted work against what Plaintiff claims to be infringing work. Therefore, Defendants are entitled to summary judgment on Count II.

Plaintiff claims that he only made minor or inconsequential changes to the 2007 source code over the years. However, this does not alter the decision here. Indeed, reliance on a later version of the registered code to prove infringement can be fatal to a copyright infringement claim. *See Airframe Sys., Inc. v. L-3 Commcn's Corp.*, 658 F.3d 100, 104 (1st Cir. 2011) (affirming summary judgment on copyright infringement claim; explaining that copyright holder produced insufficient evidence regarding substantial similarity where it could not prove the content of its registered source code versions, relying instead on an updated version of the source code). Moreover, without the 2007 source code, there is no way of determining if the changes were, indeed, inconsequential, or whether Plaintiff's allegations of infringement are based on the 2007 registered work

or on an expression added later. In any case, the lack of a complete copy of the registered 2007 source code is fatal to Plaintiff's claim in Count II.[6]

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (Doc. No. [177]) is **GRANTED** and Count II is **DISMISSED WITH PREJUDICE**.

2. Plaintiff's Motion for Partial Summary Judgment (Doc. No. [182]) is **DENIED**.

Dated: February 28, 2019            s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge

---

[6] Because the Court grants Defendants' motion for summary judgment on Count II for the above reasons, the Court declines to consider Defendants' alternative arguments in support of summary judgment.

The Court also notes that the above ruling with respect to Count II does not appear to impact the viability of Plaintiff's copyright infringement claim in Count I. That claim is based on alleged unauthorized use of licensed software by unlicensed parties. Because there is no dispute that the software was subject to a license, there is no issue regarding the substantial similarity of the software.